UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTINE HERNANDEZ,<br><br>                    Plaintiff,<br><br>-against-<br><br>DIASORIN INC., MICHAEL PROFENNO, NINEVEH SARGGIS, DUSTIN STEWART, MATT SALISBURY, JOHN AND JANE DOES 1-10, AND ABC ENTITIES 1-10,<br><br>                    Defendants. | No. 25-CV-00846 (LAP)<br><br>OPINION AND ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

     Before the Court are Nineveh Sarggis ("Sarggis"), DiaSorin Inc. ("DiaSorin"), Michael Profenno ("Profenno"), Dustin Stewart ("Stewart"), and Matt Salisbury's ("Salisbury") (collectively, "Defendants") motions for dismissal[1] and partial dismissal[2] of Plaintiff's Amended Complaint (see Am. Compl., dated Feb. 28, 2025 [dkt. no. 17]) filed pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiff has opposed both motions.[3]  For the reasons

---

[1] (See Memorandum in Support of Nineveh Sarggis's Motion to Dismiss ("Sarggis Mem."), dated July 1, 2025 [dkt. no. 33]; Reply Memorandum of Nineveh Sarggis ("Sarggis Reply"), dated Aug. 28, 2025 [dkt. no. 44].)

[2] (See Memorandum in Support of Motion for Partial Dismissal ("DiaSorin Mem."), dated July 1, 2025 [dkt. no. 31]; Reply Memorandum for Partial Dismissal ("DiaSorin Reply"), dated Aug. 29, 2025 [dkt. no. 45].)

[3] (See Plaintiff's Opposition to Motion to Dismiss ("Pl. Opp. Sarggis"), dated Aug. 5, 2025 [dkt. no. 40]; Plaintiff's Opposition to Partial Dismissal ("Pl. Opp. DiaSorin"), dated Aug. 5, 2025 [dkt. no. 39].)

set forth below, Defendants' Motions are GRANTED in part and DENIED in part.

## I.    <u>Background</u>

### A. Factual Allegations

For the purposes of these motions, the Court assumes that the following allegations are true and draws all reasonable inferences in favor of Plaintiff.  See <u>Koch v. Christie's Int'l PLC</u>, 699 F.3d 141, 145 (2d Cir. 2012).

As alleged in the Amended Complaint, Plaintiff Christine Hernandez ("Plaintiff") is a black woman residing in New York who worked remotely as a Diagnostic Sales Specialist for DiaSorin, a corporation with its primary place of business in Minnesota.  (Am. Compl. ¶¶ 10, 12.)  Plaintiff worked for DiaSorin from approximately October 2014 until her April 12, 2024 termination.  (<u>Id.</u> ¶¶ 10, 62.)

At DiaSorin, Plaintiff worked under Defendant Profenno, who held the title of Director until his later promotion to Senior Director.  Plaintiff also worked alongside Defendant Sarggis, who was Plaintiff's coworker until Sarggis was later promoted to Director.  (<u>See</u> <u>id.</u> ¶¶ 3-4.)  Defendant Stewart was Profenno's supervisor, and Defendant Salisbury was the Director of Human Resources at DiaSorin.  (<u>Id.</u> ¶¶ 5-6.)

Plaintiff performed her role at DiaSorin in an "exemplary manner" and received multiple awards for her performance.  (<u>See</u>

Id. ¶¶ 13, 50-52.)   Despite this, Sarggis and Profenno made demeaning comments towards Plaintiff in a manner that they did not do with other non-black employees.  (Id. ¶ 22.)  Sarggis would make comments in front of Plaintiff and Sarggis' boss, Profenno, suggesting that Plaintiff could not read by referring to Plaintiff pulling things "out her ass."  (Id. ¶ 21.)  In addition, Plaintiff overheard Sarggis comment "don't you people have enough holidays" to another black employee regarding the Juneteenth federal holiday.  (Id. ¶ 17.)  Upon learning that Plaintiff's brother had recently passed away, Sarggis commented: "[O]h no, not the cute one . . . you know the one I want to have sex with."  (Id. ¶ 20.)

In 2023, Plaintiff was interviewed by Human Resources in connection with an investigation into another black employee's complaint about discrimination.  (Id. ¶ 28.)  During the interview Plaintiff reported that she felt targeted and unfairly treated on account of her race.  (Id. ¶ 30.)  Shortly after speaking to Human Resources, Plaintiff learned from another black female employee, who also reported to Profenno, that the employee and Plaintiff were both paid significantly less than other similarly situated non-black employees.  (See id. ¶¶ 34-36.)  When Plaintiff complained, her salary was adjusted six months later.  However, Plaintiff did not receive back pay, and her compensation remained behind some of her non-black co-workers.  (Id. ¶ 37.)

Other co-workers told Plaintiff that the complaints she disclosed to Human Resources were reported to Sarggis, Profenno, and Stewart, who then allegedly proceeded to retaliate against Plaintiff. (Id. ¶¶ 31-32.)  The retaliation included "demeaning comments . . . being given menial tasks, cutting her territory in half . . . , not allowing her to accept earned awards, giving her an unfair and inaccurate annual review, and ultimately terminating her." (Id. ¶ 33.)  Both Profenno and Sarggis tried to reduce Plaintiff's workload under the pretext of Plaintiff's poor performance despite Plaintiff's being "the only member of her team hitting all goals." (Id. ¶ 42, 44.)  On January 19, 2024, Profenno "verbally attacked" Plaintiff in front of her team and singled her out for "no go's" despite all of her contracts being compliant. (Id. ¶ 45.)  On January 29, 2024, Profenno berated Plaintiff again and told her that her customers did not like her "as much as she thought they did." (Id. ¶ 48.)

In March 2024, Plaintiff and others "complained" (though the Amended Complaint does not specify to whom) about the hostile work environment and retaliation they were enduring at DiaSorin.  In that complaint, Plaintiff stated that "she felt her race and/or gender played a role in her treatment." (Id. ¶¶ 53-54.)  Around that time, on March 11, Profenno and Sarggis presented Plaintiff with a poor performance review, and Plaintiff was placed on a Performance Improvement Plan ("PIP"). (Id. ¶¶ 56, 57, 59.)

On April 12, 2024, Plaintiff was terminated, purportedly on the basis of two customer complaints alleging that Plaintiff had failed to follow proper protocols and the company code of conduct. (Id. ¶ 62.)  Plaintiff asserts, however, that these allegations were untrue and merely a pretext to fire her, and that the true reason she was terminated was because of her race and as retaliation for reporting discriminatory conduct.  (Id. ¶ 63.) Sarggis was subsequently promoted after Plaintiff's termination. (Id. ¶ 65.)

**B. Procedural Background**

On January 29, 2025, Plaintiff filed this action.  (See Complaint, dated Jan. 29, 2025 [dkt. no. 1].)  Because the original complaint failed properly to plead diversity jurisdiction, the Court granted Plaintiff leave to amend the complaint.  (See Memo Endorsement, dated Feb. 18, 2025 [dkt. no. 16].)

On February 28, 2025, Plaintiff filed the operative Amended Complaint asserting six claims for relief: race and gender-based discrimination under New York State Human Rights Law ("NYSHRL") against all Defendants (Count One); retaliation under the NYSHRL against all Defendants (Count Two); aiding and abetting NYSHRL violations against Profenno, Stewart, Salisbury, and Sarggis (collectively, the "Individual Defendants") (Count Three); whistleblower retaliation under New York Labor Law ("NYLL") and New York Civil Service Law ("NYCSL") against all Defendants (Count

Four); defamation against all Defendants (Count Five); and punitive damages against all Defendants (Count Six). (See Am. Compl. ¶¶ 69-95.)

On July 1, 2025, Defendant Nineveh Sarggis filed a motion to dismiss seeking dismissal of all claims in the Amended Complaint. (See Sarggis Mem.) Separately, on the same day, Defendants DiaSorin, Profenno, Stewart, and Salisbury (collectively, the "Partial Moving Defendants") jointly filed a partial motion to dismiss the Amended Complaint seeking dismissal across all counts, but not uniformly for each Defendant. (See DiaSorin Mem.) On August 5, 2025, Plaintiff filed separate oppositions to both motions to dismiss. (See Pl. Opp. DiaSorin; Pl. Opp. Sarggis.)

As construed by the Court, Defendant Sarggis moves to dismiss all claims asserted against her (Counts One through Six). (Sarggis Mem.) The Partial Moving Defendants, however, seek only dismissal of: (i) Count One's gender (but not race) discrimination claims as to Diasorin, and all of Count One's claims as to all Salisbury, Profenno, and Stewart; (ii) Count Two's retaliation claims as to Stewart and Salisbury specifically; (iii) Count Three's NYSHRL aiding and abetting claims as to Profenno, Stewart, and Salisbury; (iv) Count Four's whistleblower retaliation claims under NYLL § 740 as to Profenno, Stewart, and Salisbury only, and under NYCSL § 75-b as to all Partial Moving Defendants; and (v) Count Five's

6

defamation claims as to all Partial Moving Defendants.  (DiaSorin Mem.)

## II.  **Legal Standards**

### A. Pleading Standard Under Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 570).  That "standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (internal quotation marks and citation omitted).

At the motion to dismiss stage, the Court must "accept as true all factual allegations and draw from them all reasonable inferences" in a plaintiff's favor.  Rothstein v. UBS AG, 708 F.3d 82, 94 (2d Cir. 2013) (citations omitted).  The Court is not required, however, "to credit conclusory allegations or legal conclusions couched as factual allegations."  Id. (citations omitted).  Pleadings that offer only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." Iqbal, 556 U.S. at 678 (citation omitted).

### B. NYSHRL Pleading Standard

As discussed above, Plaintiff brings claims under §§ 296(1)(a), (6), and (7) of the NYSHRL. The NYSHRL has been treated as analogous to both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) ("Title VII") and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 ("NYCHRL").

Until recently, the NYSHRL "utilized the same standard as Title VII, but it was amended in 2019 to align with the NYCHRL's more liberal pleading standard." Qorrolli v. Metro. Dental Assocs., 124 F.4th 115, 122-23 (2d Cir. 2024). The 2019 amendment to the NYSHRL required that the NYSHRL "be construed liberally" and that "exceptions . . . be construed narrowly in order to maximize deterrence of discriminatory conduct," N.Y. Exec. Law § 300. The New York Court of Appeals has therefore held that courts must construe the NYSHRL, like the NYCHRL, "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." Syeed v. Bloomberg L.P., 41 N.Y.3d 446, 451 (2024); see also Udoh v. New York City Dep't of Prob., 2025 WL 2199613, at *8 (S.D.N.Y. Aug. 1, 2025) ("Courts must now scrutinize discrimination claims brought pursuant to the NYSHRL under the same lenient pleading standard . . . under which NYCHRL discrimination claims are analyzed.") (quoting Moore v.

8

Hadestown Broadway Limited Liability Co., 722 F. Supp. 3d 229, 245 (S.D.N.Y. 2024)).  Under that lenient pleading standard, Plaintiff must only allege sufficient facts to show she was treated "less well" due to her "membership in a protected class."  Moore, 722 F.Supp. 3d at 246.

### 1. Discrimination and Hostile Work Environment

The NYSHRL makes it an unlawful discriminatory practice "[f]or an employer. . . to discharge from employment. . . or to discriminate against. . . [an employee] in compensation or in terms, conditions or privileges of employment" because of an individual's race and gender.  N.Y. Exec. Law § 296(1)(a).  Hostile work environment claims under the NYSHRL are "subsumed within" discrimination claims, and likewise require the Plaintiff to allege she was treated "less well" due to her "membership in a protected class."  See Moore, 722 F.Supp. 3d at 246.

### 2. Retaliation

The NYSHRL also provides for direct liability under a theory of retaliation:

> It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article. Retaliation may include, but is not limited to, disclosing an employee's personnel files because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article, except where such disclosure is made in the

course of commencing or responding to a complaint in any proceeding under this article or any other civil or criminal action or other judicial or administrative proceeding as permitted by applicable law.

N.Y. Exec. Law. § 296(7).  To state a prima face case for retaliation under the NYSHRL Plaintiff must plead "that (1) she engaged in protected activity; (2) the [defendant] was aware of this activity; (3) the [defendant] took adverse action against the employee; and (4) a causal connection exists between the protected activity and the adverse action."  McHenry v. Fox News Network, LLC, 510 F.Supp. 3d 51, 67 (S.D.N.Y. 2020).[4]

For the purposes of an NYSHRL retaliation claim, Plaintiff engages in protected activity, including a "complaint. . . so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 14 (2d Cir. 2013) (per curiam) (internal citation and quotation marks omitted).  As to the "adverse action" element, Plaintiff must then show that in response to her protected activity

---

[4] As is the case with NYSHRL discrimination claims, post-amendment NYSHRL retaliation claims are treated with the same broad deference that extends to NYCHRL claims.  Qorrolli, 124 F.4th at 122-23 (noting that the post-amendment NYSHRL retaliation standard aligns with the NYCHRL standard).  However, the NYSHRL differs from the NYCHRL in that it authorizes claims against any individual who engages in retaliation, as opposed to an employer. Nezaj v. PS450 Bar & Rest., 719 F.Supp. 3d 318, 330 (S.D.N.Y. 2024) ("[A]lthough the NYSHRL does not provide for direct liability for discrimination other than by an 'employer,' it makes it unlawful for 'any person' to retaliate.").

"the [defendant] engaged in conduct that was reasonably likely to deter a person from engaging in such action." Dobney v. The Walt Disney Co., 2024 WL 325336, at *5 (S.D.N.Y. Jan. 29, 2024) (quoting Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 112 (2d Cir. 2013)). A causal nexus between the protected activity and the adverse action can be pleaded either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Littlejohn v. City of New York, 795 F.3d 297, 319 (2d Cir. 2015) (internal quotations and citations omitted).

### 3. Aiding and Abetting

In addition, the NYSHRL prohibits any individual from "aid[ing], abet[ing], incit[ing], compel[ing], or coerc[ing]" any direct act of discrimination or retaliation under the statute. N.Y. Exec. Law § 296(6). Any individual can be held liable for aiding and abetting as long as he or she "actually participate[d]" in the unlawful conduct and "share[d] the intent or purpose of the principal actor." McHenry, 510 F.Supp. 3d at 68.

## III. Discussion

### A. Improper Group Pleading Under Rule 8(a)

11

Sarggis argues that the entire Amended Complaint should be dismissed for failing to state a claim because it engages in impermissible group pleading by grouping all Defendants together in each claim and "making it unclear which Defendant engaged in the specific conduct alleged." (Sarggis Mem. at 8.) Essentially, Sarggis contends that the Amended Complaint violates Federal Rule of Civil Procedure 8(a), which requires a complaint to "give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988).

However, "[t]he key to Rule 8(a)'s requirements is whether adequate notice is given," and a complaint need not be "a model of clarity so long as it provides fair notice of what the plaintiff's claim is and the ground upon which it rests." Lively v. Wayfarer Studios LLC, 786 F.Supp. 3d 695, 737-38 (S.D.N.Y. 2025) (internal quotation marks and citations omitted). Dismissal of a complaint for violating Rule 8 is therefore only appropriate where the complaint is "so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised." Id. at 738.

It is certainly true that the Amended Complaint lacks clarity as to the boundaries of certain claims and as to the attribution of discrete acts. (E.g., "Such retaliation included demeaning comments (made to her alone, in front of customers and in front of

12

co-workers), being given menial tasks, cutting her territory in half thereby lower her earning potential, not allowed her to accept earned awards, giving her an unfair and inaccurate annual review, and ultimately terminating her." (¶ 33)). Still, mindful that a complaint need not be a "model of clarity," the Court concludes that "[d]efendants have adequate notice of many core claims that are evident from the face of the complaint." Lively, 786 F. Supp. 3d at 737-38; see also Wynder v. McMahon, 360 F.3d 73, 79 (2d. Cir. 2004) ("[P]laintiff's submission is a model of neither clarity nor brevity. . . but it is sufficient to put the defendants on fair notice."). (E.g., ¶ 17 ("Sarggis made a snark comment . . ."), ¶ 20 ("Sarggis and Profenno . . . would frequently belittle Plaintiff . . ."), ¶ 25 (Stewart . . . protected Profenno and Sarggis at the expense of Plaintiff.")).  Therefore, the Court declines to dismiss the entirety of the Amended Complaint on the grounds that it violates Rule 8(a).

That said, the Court will not consider claims that do not provide fair notice that Plaintiff is "making a particular claim, against a particular defendant, based on a particular statement [or particular conduct]." Lively, 786 F.Supp. 3d at 738.  In other words, the Court will not attempt to divine which allegations were against a particular defendant if it is not apparent on the face of the Amended Complaint.  Id. at 739.  Similarly, it will not allow Plaintiff to ambush Defendants with new claims by

retroactively clarifying its Amended Complaint through its opposition briefings or at a later stage in this litigation. Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998) (holding that a complaint may not be amended through its opposition papers). The Court will only consider claims supported by facts "that a reasonable defendant would understand to be asserted against it based on the allegations in the Amended Complaint." Lively, 786 F.Supp. 3d at 739.

**B. NYSHRL Claims (Counts One, Two, and Three)**

Plaintiff offers various theories of liability for discrimination and hostile work environment, retaliation, and aiding and abetting discrimination under the NYSHRL. The sufficiency of those pleadings with respect to the individual Defendants is analyzed below.

1. Count One: Discrimination and Hostile Work Environment

a. *Whether The Individual Defendants Are "Employers" Under the NYSHRL*

As a threshold matter, the Individual Defendants argue that the direct discrimination and hostile work environment claims under the NYSHRL alleged in Count One must be dismissed because the Individual Defendants do not qualify as "employers" under the NYSHRL and, therefore, are not subject to direct liability. (DiaSorin Mem. at 8; Sarggis Mem. at 9.)

The Individual Defendants are correct that "where a corporate entity is the plaintiff's employer, an individual affiliated with the entity cannot himself qualify as the employer." Nezaj, 719 F.Supp. 3d at 329 (S.D.N.Y. 2024). Indeed, the New York Court of Appeals has specifically held that where, as here, a plaintiff is employed by a corporate entity, the employer is the corporate entity itself for the purposes of a NYSHRL claim. Doe v. Bloomberg L.P., 36 NY.3d 450, 459 (2021). Accordingly, "shareholders, agents, limited partners, and employees"—such as Individual Defendants—"are not employers." Id.

In arguing that employees can be held individually liable under the NYSHRL, Plaintiff conflates the NYSHRL with the NYCHRL. (See Pl. Opp. DiaSorin at 9-10; Pl. Opp. Sarggis 8-10.) The NYCHRL, it is true, makes it unlawful for "an employer or an employee or agent thereof" to discriminate based on protected characteristics and thus extends liability to employees. N.Y.C. Admin. Code § 8-107(1)(a) (emphasis added). The NYSHRL, however, only confers direct liability for discrimination by "an employer." N.Y. Exec. Law § 296(1)(a).

Since the NYSHRL, unlike the NYCHRL, provides for direct liability for discrimination only by the corporate employer, individual employees cannot be held liable under that part of the statute. Id. at 329; see also Baptiste v. City Univ. of N.Y., 680 F.Supp. 3d 415, 427 (S.D.N.Y. 2023) (holding that individual

15

defendants can be liable for discrimination "under the state statute only on an aider-and-abettor theory."). Therefore, liability for discrimination under the NYSHRL cannot extend to Sarggis, Profenno, Stewart, and Salisbury because they are employees of DiaSorin, the corporate employer.

Accordingly, the motions to dismiss Count One in its entirety with respect to Sarggis, Profenno, Stewart, and Salisbury are GRANTED.

b. *Whether Count One Alleges Gender Discrimination Against DiaSorin*

Defendant DiaSorin, on the other hand, is an "employer" within the meaning of the NYSHRL. However, DiaSorin argues that Count One "fails to allege sufficient facts" to support her gender-based discrimination and hostile work environment claims against DiaSorin. (DiaSorin Mem. at 9.) Specifically, DiaSorin alleges that Plaintiff fails to establish a causal connection between her gender and adverse employment action beyond the conclusory assertion that she was treated less well because of her gender. (Id. at 10-11.) The Court therefore construes this as a motion to dismiss the gender—but not race—claims of Count One against DiaSorin.

To state a claim for gender discrimination under the amended NYSHRL "Plaintiff needs only to show that she has been treated less well at least in part because of her gender." Mumin v. City

16

of N.Y., 760 F.Supp. 3d 28, 55 (S.D.N.Y. 2024) (internal quotation marks omitted).  To meet this standard Plaintiff must provide facts that allow the Court reasonably to infer that she has been treated less well because of her gender.  Id.  Plaintiff can raise such an inference "by demonstrating the disparate treatment of at least one similarly situated employee outside [her] protected group and sufficient facts from which it may reasonably be inferred that the plaintiff's and comparator's circumstances. . . bear a reasonably close resemblance."  Syeed v. Bloomberg L.P., 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021), vacated and remanded on other grounds following certification, 2024 WL 2813563 (2d Cir. June 3, 2024) (summary order).  She may also show intent by identifying statements made by Defendants that indicate a negative disposition towards women in the workplace.  See Williams v. N.Y.C. Hous. Auth., 872 N.Y.S.2d 27, 41 n.30 (N.Y. App. Div. 2009) ("a single comment that objectifies women. . . made in circumstances where that comment would, for example, signal views about the role of women in the workplace [may] be actionable.").

Here, Plaintiff fails to articulate that she was treated less well than a similarly situated male employee.  She raises for the first time in her opposition that she was "subjected to less pay than men" (Pl. Opp. DiaSorin at 13) but she has not identified in her Amended Complaint a single similarly situated male employee that was paid more.  As mentioned above, the Court will not infer

17

the existence of allegations that were not present in the Amended Complaint or allow Plaintiff retroactively to amend her pleadings through her opposition papers.

The only other similarly-situated parties Plaintiff identifies in her complaint who received preferential treatment are, Sarggis, a woman, and "non-Black employees working the same position with similar experience" who were paid a higher wage. (Am. Compl. ¶ 34.)  She also points to another black employee that was "paid less than her non-Black counterparts" (id. ¶ 35) and notes that they were "the only Black female employees supervised by Profenno" (id. ¶ 36).  Plaintiff also alleges that parties at DiaSorin made comments that could indicate racial animus but none that could raise an inference of gendered hostility.  See supra Section I.A.  Indeed, as all parties agree, these facts are sufficient to support an inference of racially motivated discrimination and that similarly situated non-black employees at DiaSorin received better treatment, but Plaintiff simply does not allege in her complaint similar facts about a single male employee. Therefore, even making all reasonable inferences in her favor, there are no facts supporting Plaintiff's claim that the discrimination she claims was motivated in any part by her gender.

Accordingly, DiaSorin's motion to dismiss Count One's claims of gender discrimination under the NYSHRL against DiaSorin is GRANTED.[5]

### 2. Count Two: Retaliation

Defendants Stewart and Salisbury (DiaSorin Mem. at 11), as well as Sarggis in her own brief (Sarggis Mem. at 10-11), move to dismiss the NYSHRL retaliation claims in Count Two because Plaintiff fails to allege that Stewart, Salisbury, and Sarggis "actually participated in any cognizable acts of retaliation." Mitchell v. Planned Parenthood of Greater New York, Inc., 745 F.Supp. 3d 68, 107 (S.D.N.Y. 2024).  Plaintiff counters that she has sufficiently attributed conduct to those Defendants that would constitute retaliation.  (Pl. Opp. DiaSorin at 16-17; Pl. Opp. Sarggis at 12-13.)

Plaintiff has adequately pleaded that she engaged in a protected activity as she did make complaints about how she was treated less well than her non-Black counterparts.  (Am. Compl. ¶¶ 30, 37, 43, 55.); see Knight v. City of New York, 303 F.Supp. 2d 485, 496 (S.D.N.Y. 2004), aff'd, 147 F.App'x 221 (2d Cir. 2005)

---

[5] Because the Defendants only move to dismiss the gender discrimination claims for failure to state a claim against DiaSorin, the Court will not consider whether the gender discrimination claims should be dismissed on the same grounds for the Individual Defendants.  Those claims are only dismissed as to the Individual Defendants on the grounds that the Individual Defendants do not qualify as "employers" under the NYSHRL.

(summary order) (informal complaints constitute protected activity).  The more salient issue is whether Plaintiff has sufficiently alleged that Stewart, Salisbury, and Sarggis each individually engaged in conduct that went beyond "petty slights or minor annoyances, [which] are insufficient to establish an adverse employment action under the NYCHRL [or post-amendment NYSHRL]." Kulick v. Gordon Prop. Grp., LLC, 2025 WL 448333, at *14 (S.D.N.Y. Feb. 7, 2025).

There are no facts in the Amended Complaint that suggest Stewart had any direct "personal[] involvement" in any retaliatory action against Plaintiff or that he knew about any retaliatory action.  Shinde v. Chamber Music Am., Inc., 2025 WL 1042284, at *8-*9 (S.D.N.Y. Feb. 25, 2025).  Indeed, Stewart is mentioned as having known about Plaintiff's complaints to Human Resources, (Am. Compl. ¶ 31) but is only referred to two other times in the entire complaint and in a conclusory manner (see id. ¶ 25 ("Stewart. . . protected Profenno and Sarggis at the expense of Plaintiff"); id. ¶ 32 ("Stewart. . . retaliated against her")).  Absent any alleged conduct, holding a senior position is insufficient to impute direct personal involvement.  See Shinde, 2025 WL 1042284 at *8 (holding that members of the executive committee cannot be held liable for retaliation without further allegations that they personally participated in retaliatory conduct).

Similarly, there is no conduct attributed to Salisbury that would allow a reasonable person to infer that he directly participated in any retaliatory conduct. Plaintiff only states that her discussions with Human Resources, where she was interviewed about another employee's complaint of discrimination, "were reported" to Sarggis, Profenno, and Stewart. (Am. Compl. ¶ 31.) The Amended Complaint does not specify who relayed the information to other parties and whether this action was retaliatory in nature or a part of investigating the other employee's complaint. See Moore, 722 F.Supp. 3d at 256 ("general corporate knowledge" of a protected activity is a part of investigating discrimination complaints).

Plaintiff mentions, for the first time, in her opposition papers that the "Complaint further alleges that Salisbury moved Plaintiff to a new territory to 'punish' her for reporting the discriminatory conduct." (Pl. Opp. DiaSorin at 16.) The Amended Complaint states that another employee told Plaintiff that his "impression" from Salisbury was that "they were transitioning the New [J]ersey territory to punish plaintiff." (Am. Compl. ¶ 44 (emphasis added).) But the complaint does not specify who "they" refers to and, as mentioned above, the Court will not allow Plaintiff to rely on vague allegations from the Amended Complaint that do not attribute discrete acts to a particular party. See supra Section III.A. Plaintiff also does not specify when this

21

conduct occurred other than "later" than December 13, 2020, which could be well before Plaintiff first complained "in or about 2023." (Am. Compl. ¶¶ 28, 42, 44.)   Thus, Plaintiff fails to attribute any conduct to Salisbury that would constitute retaliation.

With respect to Sarggis, Plaintiff argues in her opposition papers that Sarggis took retaliatory action against Plaintiff by "punitively [telling] Plaintiff her territory was being split, giving Plaintiff an undeserved performance review, punitively putting Plaintiff on a PIP. . . and participating in Plaintiff's termination" and that those actions were "specifically linked to Plaintiff['s] reporting the discrimination in March of 2024."  (Pl. Opp. Sarggis at 13.)

Plaintiff's theory of liability as to Sarggis fails on several grounds.  Plaintiff does not establish that Sarggis knew about her March 2024 complaint when she engaged in the alleged retaliatory conduct.   The Amended Complaint does not allege that the March 2024 complaint was relayed to Sarggis.  (Am. Compl. ¶ 53); see Moore, 722 F.Supp. 3d at 256 (internal quotations omitted) ("[G]eneral corporate knowledge arise[s] when a supervisor, corporate officer, or employee whose job it is to investigate and resolve discrimination complaints becomes aware of the protected activity.")  (internal quotations omitted).   Additionally, Plaintiff does not state in the Amended Complaint that her March 2024 complaint occurred prior to most of the alleged retaliation

22

by Sarggis.  Sarggis told Plaintiff her territory was being split "[o]n or about December 13, 2020," well before Plaintiff made any sort of complaint.  (Am. Compl. ¶ 42.)  Sarggis allegedly helped give Plaintiff a performance review along with Profenno on March 11 and sent her a PIP March 12, (id. ¶¶ 57, 60), but the Complaint only specifies that she complained in "March of 2024" (id. ¶ 53).  The only act that is properly alleged to have occurred after Plaintiff complained was her termination, which was not attributed to Sarggis.  (Id. ¶ 62.)

Indeed, Sarggis does not appear to have the authority directly to administer any of the alleged retaliatory conduct. Sarggis could not terminate Plaintiff, as Sarggis was Plaintiff's co-worker at the time and was not promoted until after Plaintiff's termination. (Id. ¶ 65.)  Similarly, Plaintiff does not allege Sarggis had the authority to administer a performance review or put Plaintiff on a PIP either.  Without the authority directly to discipline or terminate Plaintiff, Sarggis's behavior amounts to "petty slights or minor annoyance," which do not constitute an adverse action. See Kulick, 2025 WL 448333 at *14 (merely criticizing plaintiff's performance and informing plaintiff of termination was insufficient to establish direct liability where defendant did not make the decision to terminate the plaintiff).

Accordingly, the motions to dismiss Count Two against Stewart, Salisbury, and Sarggis are GRANTED.

3. Count Three: Aiding & Abetting

Defendants contend that the aiding and abetting claims must be dismissed as to the Individual Defendants because "an individual cannot aid and abet [his or her] own conduct." (DiaSorin Mem. at 14-15; Sarggis Mem. at 12.). However, aiding and abetting liability is permissible when a corporate employer is considered the principal actor, even if it is through vicarious liability stemming from an individual's actions. McHenry, 510 F.Supp. 3d at 73 (internal quotations, emphasis, and citations omitted) (aiding and abetting liability can be established "even where [an individual defendant's] actions serve as the predicate for the employer's vicarious liability, so long as the employer's conduct has also been found to be discriminatory under the NYSHRL.") Additionally, "a co-worker who actually participates in the conduct giving rise to a discrimination claim" can be held liable "even though that co-worker lacked the authority to either hire or fire the plaintiff." Feingold v. New York, 366 F.3d 138, 158 (2d Cir. 2004).

Because principal liability has been adequately pleaded as to DiaSorin for racial discrimination and Profenno for retaliation (as noted above, Defendants do not move to dismiss these claims), all other parties can be held liable under an aiding and abetting theory if they "actually participated" in the conduct and "share[d]

24

the intent or purpose of the principal actor." McHenry, 510 F.Supp. 3d at 68.  Plaintiff has adequately pleaded aiding and abetting liability as to Profenno, Salisbury, and Sarggis, but not Stewart.

With respect to Sarggis, Plaintiff sufficiently alleges that Sarggis "actually participated" in both Profenno's retaliation and hostile work environment at DiaSorin.  See Feingold, 366 F.3d at 158.  Retaliatory or discriminatory intent can be inferred from Sarggis' alleged hostile and racially charged comments towards Plaintiff, including Sarggis' derogatory comments regarding Juneteenth, sexual comments regarding Plaintiff's brother, and suggestions that Plaintiff could not read.  (See Am. Compl. ¶¶ 17-23.)  Plaintiff also alleges that Sarggis became aware of Plaintiff's complaints to Human Resources and that, after learning of Plaintiff's complaints, Sarggis bragged to other employees that Sarggis was going to "get rid of" Plaintiff and anyone else who went to Human Resources.  (Id. ¶ 38.)

With respect to Salisbury, Profenno, and Stewart, Plaintiff alleges a supervisory theory of liability.  Plaintiff alleges that these three defendants all held supervisory roles and failed appropriately to respond to Plaintiff's complaints of discrimination.  When properly pleaded, this can constitute aiding and abetting discrimination.  See McHenry, 510 F.Supp. 3d at 68 (quoting Parra v. City of White Plains, 48 F.Supp. 3d 542, 555

(S.D.N.Y. 2014)) (internal quotation marks omitted) ("A supervisor's failure to take adequate remedial measures in response to a complaint of discrimination can, with proper factual allegations constitute actual participation.") (emphasis added).

Here, Plaintiff has alleged that Profenno and Salisbury, as supervisors, were "sufficiently aware of enough of the underlying conduct to understand its discriminatory nature." Fellah v. City Univ. of N.Y., 2022 WL 4619902, *9 (S.D.N.Y. Sep. 30, 2022). As alleged, Profenno "verbally attacked" Plaintiff on various occasions and oversaw her performance review, (Am. Compl. ¶¶ 36, 45, 48, 57), which is sufficient to allege that Profenno aided and abetted the direct discrimination and hostile work environment claims attributed to DiaSorin. Salisbury, meanwhile, is alleged to have confided in another employee that Plaintiff had her territorial responsibilities reduced "to punish Plaintiff" and reduce her earning potential, (see id. ¶¶ 42-44), which is sufficient to allege that Salisbury aided and abetted Profenno's retaliation.

However, Stewart, unlike Profenno and Salisbury, is not alleged to have any specific knowledge of any discrete acts of discrimination or retaliation. Indeed, the Complaint only contains three factual allegations regarding conduct by Stewart, all of which are conclusory in nature. (See id. ¶ 25 ("Stewart, Profenno's boss, had a close relationship with Salisbury, the head

26

of Human Resources, and protected Profenno and Sarggis at the expense of Plaintiff."); id. ¶ 31 ("Other co-workers told Plaintiff that her discussions with Human Resources were reported to Sarggis, Profenno, and Stewart."); id. ¶ 32 ("Thereafter, Sarggis, Stewart and Profenno in particular retaliated against her, and the hostility toward her increased exponentially.")).  On these conclusory allegations, Stewart cannot be held liable under a theory of aiding and abetting.

Accordingly, the motions to dismiss Count Three are GRANTED as to Defendant Stewart and DENIED as to Defendants Sarggis, Salisbury, and Profenno.

### C. NYLL and NYCSL Claims (Count Four)

Defendants Sarggis, Profenno, Stewart, and Salisbury move to dismiss the NYLL § 740 claims in Count Four on the ground that they do not qualify as "employers" under the NYLL statute, which only imposes liability on employers.  (See Sarggis Mem. At 12-13; DiaSorin Mem. at 15.)  The plain language of the NYLL provides that "[a]n employer shall not take any retaliatory action against an employee," N.Y. Lab. Law § 740(2), and that an "[e]mployer means any person, firm, partnership, institution, corporation, or association that employs one or more employees," N.Y. Lab. Law § 740(1)(b).  Since the Individual Defendants are not "employers" under this definition, the claims against them must be dismissed. McSweeney v. Cohen, 776 F.Supp. 3d 200, 277 (S.D.N.Y. 2025).

Defendants also argue the NYCSL § 75-b claims should be dismissed as to all parties because they are not "public employers" and Plaintiff is not a "public employee" as DiaSorin is a private company. (DiaSorin Mem. at 16; Sarggis Mem. at 13-14.) Plaintiff does not substantively respond to this argument in her opposition papers. In any event, Defendants are correct that NYSCL § 75-b only applies to <u>public</u> employers and employees and does not impose liability on <u>private</u> companies or individuals. See <u>Fouche v. St. Charles Hosp.</u>, 43 F.Supp. 3d 206, 212-13 (E.D.N.Y. 2014) (holding that plaintiff cannot state a claim under NYCSL § 75-b against a private employer); N.Y. Civ. Serv. § 75-b(1)(a).

Accordingly, Defendants' motions to dismiss the claims against the four Individual Defendants under NYLL § 740 are GRANTED, and the Defendants' motions to dismiss the claims against all Defendants under NYCSL § 75-b are GRANTED. The only remaining claim under Count Four is the NYLL § 740 claim against DiaSorin.

### D. Defamation (Count V)

Defendants argue that the defamation claims must be dismissed against all parties because Plaintiff fails to state a claim with sufficient particularity. (DiaSorin Mem. at 17-18; Sarggis Mem. at 14-15.) Federal Rule of Civil Procedure 8(a) "requires that each pleading be specific enough to afford defendant sufficient notice of the communications complained of to enable to defend himself." <u>Biro v. Conde Nast</u>, 883 F.Supp. 2d 441, 456 (S.D.N.Y.

28

2012).  Plaintiff fails to meet this bar as her defamation claim is based on the conclusory assertion that "[d]efendants. . . made false comments about her bad 'behavior' in front of many colleagues."  (Am. Compl. ¶ 90.)

At the pleading stage, Plaintiff must identify with some level of particularity what was said, who said it, and to whom it was said.  See Lively, 786 F.Supp. 3d at 739-740 (holding that the parties "have an obligation to identify the statements which harmed them, rather than gesturing at a . . . category of statements and forcing the defendant to guess at which ones are actionable"); see also Thai v. Cayre Grp., Ltd., 726 F.Supp. 2d 323, 329 (S.D.N.Y. 2010) (internal quotation marks omitted) ("A defamation claim is only sufficient if it adequately identifies the purported communication, and an indication of who made the communication, when it was made, and to whom it was communicated.")

Accordingly, Defendants' motions to dismiss the defamation claim in Count Five as to all parties are GRANTED.

## IV.  Leave To Amend

Plaintiff, in a footnote, suggests that "[a]t best, the remedy here would be to allow amendment, rather than dismissal."  (Pl. Opp. DiaSorin at 1 n.2; Pl. Opp. Sarggis at 1 n.1.)  Amendment is not discussed any further in Plaintiff's briefings, and Plaintiff offers no basis for how she would cure any of the defects in the Amended Complaint.

29

"The Second Circuit has indicated that when a plaintiff does not advise the district court how the complaint's defects would be cured . . . it is not an abuse of discretion to implicitly deny leave to amend." Inong v. Fujifilm N. Am. Corp., 714 F. Supp. 3d 266, 275 (S.D.N.Y. 2024) (internal quotations and citation omitted); see also Altayyar v. Etsy, Inc., 731 F. App'x 35, 38 n.4 (2d Cir. 2018) (summary order) (district court did not abuse discretion in dismissing complaint with prejudice where "plaintiffs requested leave to amend in a cursory manner without any explanation for how they would be able to cure the complaint's defects"); In re Tamoxifen Citrate Antitrust Litig., 466 F.3d 187, 220 (2d. Cir. 2006), abrogated on other grounds by, F.T.C. v. Actavis, Inc., 570 U.S. 136 (2013) ("It is within the court's discretion to deny leave to amend implicitly by not addressing the request when leave is requested informally in a brief filed in opposition to a motion to dismiss."). Accordingly, the Court declines to grant Plaintiff leave to amend.

## V.    Conclusion

For the foregoing reasons, Defendants' motions to dismiss are GRANTED in part and DENIED in part. For the sake of clarity, the Court will summarize the status of each count as to each Defendant:

- Count One is dismissed in its entirety as to all of the Individual Defendants, but only the claims of gender

30

discrimination are dismissed with regard to Defendant DiaSorin;

- Count Two is dismissed in its entirety as to Defendants Sarggis, Stewart, and Salisbury;

- Count Three is dismissed in its entirety as to Stewart;

- Count Four is dismissed as to all Defendants, except for the claim under NYLL § 740 against DiaSorin;

- Count Five is dismissed as to all Defendants;

- Count Six is dismissed as to Stewart, who is dismissed from the case entirely.

The claims that survive as to each Defendant are as follows:

- Count One: race-based discrimination in violation of the NYSHRL (Defendant DiaSorin);

- Count Two: retaliation in violation of the NYSHRL (Defendants Profenno and DiaSorin);

- Count Three: aiding and abetting NYSHRL violations (Defendants Sarggis, Profenno, and Salisbury);

- Count Four: whistleblower retaliation in violation of NYLL § 740 (Defendant DiaSorin);

- Count Six: punitive damages against DiaSorin, Sarggis, Profenno, and Salisbury.[6]

---

[6] The Court notes that punitive damages are a <u>remedy</u> as opposed to a cause of action.  <u>See, e.g.</u> <u>Fishberg v. State Farm Fire & Cas.</u>

The Clerk of the Court shall close docket numbers 30 and 32.

**SO ORDERED.**

Dated:    December 22, 2025
          New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge

---

Co., 2021 WL 3077478, at *5 (S.D.N.Y. July 20, 2021) ("New York does not provide an independent cause of action for punitive damages."). Defendants, however, do not address Count Six, save for Sarggis' comment that the Court should dismiss Count Six "if the Court dismisses Count One through Five" against Sarggis. (Sarggis Mem. at 3.) Because Defendants do not otherwise move to dismiss Count Six, the Court will not address at this stage whether Count Six remains independently viable.